## SUCCESSION OF MRS. E. H. DORSEY.

Where the endorser pays a judgment, which has been rendered both against himself and the drawer, he is subrogated by law to the rights of the judgment creditor. C. C. 21, 57.

Where an endorser has been legally subrogated, by payment of a judgment to the rights of the creditor against the drawer, the note is merged in the judgment, and is not barred by the prescription applicable to promissory notes.

Where the endorser has been subrogated to the rights of a judgment creditor, against a married woman who was the drawer, she will not be permitted to set up the defence against the endorser, that the note was given for the benefit of her husband. This defence should have been urged against the suit in which judgment was rendered against her. If she has a good defence against the endorser, which could not have been urged against the holder, it is her duty to allege and establish that defence by evidence.

APPEAL from the Second District Court of New Orleans, *Lea*, J. The judgment of the district court was as follows :

" This case comes up on the oppositions made to the account filed by the executor, by *H. Lockett* and *J. L. Gaiennié*. The claim of *H. Lockett*, for one hundred dollars, is sustained by the evidence. The only question to be determined, is whether *L. R. Gaiennié* is subrogated to the rights of *J. L. Florance,* as a judgment creditor of the deceased. It appears, from the evidence, that *L. R. Gaiennié* was endorser upon a note drawn by the deceased, duly authorized. On this note judgment was obtained by *J. L. Florance*, the holder, against the deceased, *Mrs. Dorsey*, and *L. R. Gaiennié*. Execution was issued against *L. R. Gaiennié*, who paid the judgment.

" I shall not consider the question of conventional subrogation, as this ground has been abandoned in the argument, but shall confine my opinion to that of legal subrogation.

" *Gaiennié*, the endorser, paid the debt for which he was bound with *Mrs. Dorsey*, and, so far as the evidence shows, for *Mrs. Dorsey*, and which he not only had an interest in discharging, but which he was compelled to discharge under process of execution. See Civil Code, 2157, sec. 3. It is urged in argument that this payment does not, under the circumstances, constitute a subrogation. First, because the maker might have a defence against the endorser which could not be set up against the holder, such as that the note was

made for the payee's accommodation, as is frequently the case. This undoubt- <span style="float:right">SUCCESSION OF<br>DORSEY.</span>edly might be the case, but it is neither alleged nor proved in the present case; it is merely suggested as possible, but this is not sufficient; such a defence may possibly exist against any payee or endorser of a note who has been compelled to take it up, but, to be available, it should be alleged as matter of defence, or, at least, it should be disclosed by the evidence. An endorser who pays a note, is *prima facie* subrogated to all the rights of the holder.

"The second point urged, is that the opponent's right is an action on the note which he has paid ; that he is not subrogated to judgment; that, as holder of the note, the right of action is barred by the prescription of five years, which is specially pleaded. If the subrogation was complete, the endorser had a right to stand in the shoes of the holder to whom he paid, without prejudice, however, to the defendant's right to urge matter of defence, strictly personal as against the endorser, which has not been done.

"Lastly, it is urged that it should appear affirmatively that the consideration of the note inured to *Mrs. Dorsey*'s benefit. This should have been urged on the trial of the case, before judgment rendered, or after judgment, upon appeal. It is not competent for this court to inquire into the validity of a judgment rendered nearly ten years ago by the city court.

"It is ordered, adjudged and decreed, that the tableau filed herein be so amended as to place the name of *Henry Lockett* thereon, as a creditor in the sum of one hundred dollars, and that of *L. R. Gaiennié*, in the sum of eight hundred and fifty-three dollars and fifty cents, with interest thereon at the rate of ten per cent per annum, from the 4th November, 1841, till paid, with five dollars cost of protest, and forty dollars and thirty-seven and a half cents costs of suit."

The following statement of facts was agreed upon by the parties:

*J. L. Florance* instituted suit against *Mrs. Dorsey* and *L. R. Gaiennié*, in the City Court of New Orleans, on the 12th November, 1841, on a promissory note for $853 50, bearing ten per cent per annum interest from maturity till paid. The note was made by *Mrs. Dorsey*, with the consent of her husband, to the order of, and endorsed by *L. R. Gaiennié*, in blank. The note matured on the first November, 1841. *Mrs. Dorsey* filed her answer on the 26th November, 1841. There is nothing in the record to show that this answer was filed with the consent of her husband, or that he authorized her to appear and defend the suit.

Judgment by default was taken against *Gaiennié*, and confirmed on the 3d December, 1841.

On the 8th December, 1841, judgment was rendered against *Mrs. Dorsey* for the amount of the note.

Separate judgments were given against *Mrs. Dorsey* and *Gaiennié*, and separate *fi. fas.* issued against them.

On the 25th April, 1842, a *fi. fa.* issued against *Gaiennié*, and was returned on the 24th May, 1842, "satisfied."

*L. R. Gaiennié* assigned all his rights in the judgment to *O'Grady*, subrogating him thereto, and *O'Grady* made a similar assignment to *Mrs. Gaiennié*.

The answer filed by *Mrs. Dorsey* is in the following words : "that said note was given by her without consideration." She received, but for the benefit of her husband, which was the amount of a judgment obtained by said *Florance* against her husband, and prays to be dismissed.

The case was regularly set for trial. On the trial, *Mrs. Dorsey* did not

appear, either in person or by counsel. Her answer was filed by an attorney at law.

*H. Lockett*, for the opposition, contended as follows : The counsel have agreed on a statement of facts, filed in the record of the case, and is printed by the appellee in this his brief.

In November, 1841, *J. L. Florance* instituted suit against *Mrs. E. H. Dorsey*, upon a promissory note signed by her, with the consent of her husband, payable to *L. R. Gaiennié*, who endorsed it to *Florance*. Judgment was obtained against *Gaiennié*, and *Mrs. Dorsey*. Separate judgments. In April, 1842, a *fi. fa.* was issued, separately, against *Gaiennié*, and was returned satisfied. The record of the suit against *Gaiennié* and *Mrs. Dorsey*, in the late city court, was introduced, without objection, to show the quality in which *Gaiennié* paid the money, now in controversy, to wit, as endorser. The payment of *Gaiennié* of the *fi. fa.* under the judgment, was a payment of the judgment, and by that payment he became, at the date of the payment, subrogated to *Florance* in all his legal rights as a judgment creditor against *Mrs. Dorsey*. Civil Code, art. 2157.

In the statement of facts, the court will find the answer of *Mrs. Dorsey* to the suit brought by *Florance* against her, in which she pleaded that the debt was contracted for the benefit of her husband, and not for her own, and it did not inure to her benefit. The suit was tried, and a judgment was rendered against *Mrs. Dorsey* under this issue ; a separate judgment.

*Mrs. Dorsey* died in 1846, and left *G. Dorsey*, her husband, executor. He, in his capacity as executor, filed an account of his administration, which is in the record, and omitted to place *Gaiennié*, on the account, as a creditor. *Gaiennié* filed an opposition, and prayed to be placed on the account, as a creditor, on the ground that he, as endorser, had paid the judgment, and was thereby subrogated to all the rights, &c. of *Florance*. At the trial of opposition, the judge below decided, that *Gaiennié* was, by the fact of this payment, subrogated to the rights of *Florance*, and decreed that he should be placed on the account as a creditor of the estate, for the amount of the judgment, to wit, eight hundred and fifty-three dollars and fifty cents, with ten per cent per annum from the 4th November, 1841, the date the note fell due, till paid. From this decision the executor has taken this appeal.

The Civil Code, art. 2157, is clear in favor of the opponent. The decisions of this court, on the point of subrogation, are equally clear, and are so numerous as to dispense me with referring to more than one or two of them. *Howe* v. *Fraser*, 2 R. R. 424.

The appellant filed no answer to the opposition; perhaps he was not bound so to do. But in his argument below, and in his brief, printed and filed in this case, he says that if *Gaiennié* was subrogated, he was subrogated to this note, which is barred by prescription. This is hardly worth noticing. If there be a subrogation, it is to the judgment, or nothing. The note was merged in the judgment. I do not suppose that there is any prescription against the judgment.

The appellant next says, that it does not appear from the record, that *Mrs. Dorsey* was authorized by her husband to file the answer she made to the suit of *Florance* ; that she did not appear personally, or by counsel, at the trial of the case, although her answer was filed by an attorney at law, and therefore she is not bound to pay *Gaiennié* ; and pretends to set up the same plea she did against *Florance*.

Now the appellee contends, that if he be subrogated, he stands in the shoes of *Florance*. In one word, he is, in law, *Florance*. That if *Florance* had filed this opposition, *Mrs. Dorsey* could not again set up the plea she made in the suit of *Florance* against herself in the late city court. It is *res judicata*. The presumption is, that all the proceedings were legally conducted, and that the judgment was properly rendered, and she is now debarred from again contesting the validity of that judgment. She should have instituted her action of nullity, within the time allowed by law, which is now long past. If this plea could not be set up against *Florance*, it cannot be against *Gaiennié*.

This is the view taken by the judge below, and on that ground he decided against the executor. I refer the court to his opinion, which is quite minute and in detail. The record is a very short one.

In the statement of facts, the court will find an admission, that *Mrs. Gaiennié* is subrogated to all the rights which *Florance* had against *Mrs. Dorsey*, and

*G. R. Gaiennié* in prosecuting this claim, as tutor to his minor children, and as <span style="float:right">SUCCESSION OF<br>DORSEY.</span> administrator to his wife's estate.

The executor makes a strange argument: He contends that *Gaiennié's* claim is upon the note, and not on the judgment. It has always been supposed that a judgment rendered on a claim, merges the claim, and extinguishes it at once. There is but little probability that your honors will change the rule on that subject, for the benefit of the executor, in this case.

But, says he, *J. L. Florance* was a *bonâ fide* holder for a valuable consideration, and no defence could be set up by *Mrs. Dorsey* against him. A defence could be set up though, he says, against *Gaiennié.*

Both these propositions are erroneous. If *Mrs. Dorsey* had a defence based upon the fact, that the consideration did not inure to her separate advantage, she could have urged it against all the world. The note, under these circumstances, being originally void, no number of transfers could give it validity. Again, *Gaiennié* being endorser, in which capacity he paid the judgment rendered against him on her note, became, *prima facie*, her creditor. If she had any defence against *Gaiennié*, it should have been established, when the opposition was tried. The question as to whose benefit the note was given, was closed by the judgment for ever.

*P. E. Bonford*, in behalf of the executor, contended : The executor's account in this case, is opposed by *L. R. Gaiennié*, as administrator of his wife's succession, on the ground that he is, in that character, a creditor of the succession of *Mrs. Dorsey*, and should have been placed as such upon the tableau of distribution.

The circumstances upon which this claim is founded are these : The decedent, with the consent of her husband, made a promissory note to the order of the opponent for the sum of $853 50, with interest at the rate of ten per cent per annum, from maturity until payment. The note matured on the 4th of November, 1841, and was not paid.

*Florance*, the holder, sued the decedent and *L. R. Gaiennié* in the City Court of New Orleans. The defendants severed in their answers. Judgment was rendered against *Gaiennié* on the 30th November, 1841, and against *Mrs. Dorsey* on the 8th of December following.

An execution was issued against *Gaiennié*, which was returned by the sheriff on the 25th of April, 1842, satisfied, the amount thereof having been paid by *Gaiennié*. On the 19th of December, 1842, *Florance* made a conventional transfer of all his rights against *Mrs. Dorsey* to *L. R. Gaiennié*, who subsequently conveyed the same interest to *John C. O'Grady. O'Grady* sold the claim thus acquired to *Mrs. L. R. Gaiennié.*

Upon these facts, it is insisted by *Gaiennié* that he was both legally and conventionally subrogated to the judgment of *Florance* against the decedent; conventionally, by the contract of the 19th of December, 1842 ; legally, because he was endorser on the note, of which *Mr. Dorsey* was the maker, having as endorser taken the note up, he thereby became entitled in law, and was invested with all the rights, actions and securities which the holder possessed at the time of the payment.

So far as the claim is based upon the conventional subrogation, it is very easily disposed of. *Florance* had been paid in April, 1842. From the day the payment was made, he ceased to have any rights upon the note, or upon the judgment he had obtained against the several parties to it. For though a party may have two or more judgments against different persons on the same obligation, he can have but one satisfaction.

On the 19th of December, 1842, therefore, he attempted to convey what he did not own. He had not then any claim against *Mrs. Dorsey*. He could not have issued execution against her upon his judgment, because his rights as holder, had been extinguished in the April preceding by the payment made by *Gaiennie*, the endorser. Consequently, it is evident, as there was no subrogation at the time of the payment, there could have been none afterward. See Civil Code, art. 2156,

Was *Gaiennié* legally subrogated in April, 1842, to *Florance's* judgment against *Mrs. Dorsey*, by satisfying the judgment which *Florance* had obtained against him ? It is said he was, and his case is alleged to be embraced in the third paragraph of article 2157 of the Civil Code, and that being bound jointly with *Mrs. Dorsey*, and for her, and having an interest in discharging the debt, he became subrogated of right to the creditor's rights, actions, privileges and mortgages. See article 2157.

To sustain this position, *Gaiennié* must prove the debt he paid was a debt which he had incurred for, or on which he was bound jointly with *Mrs. Dorsey.*

How has he undertaken to prove this ? By the production of the note itself, which shows on its face it was made by *Mrs. Dorsey*, payable to *Gaiennié's* order. If *Mrs. Dorsey* had not been a married woman at the time this note was made, we freely admit a presumption would arise on the note itself, that she was ultimately bound for its payment. But what we insist upon is, that in the case of a note made by a married woman, not only is there no such presumption that she is bound to the payee, but in fact the presumption is the other way, that is, that she is not so bound. For the signature of the wife to an obligation is an evidence of indebtedness, not by her, but by the community, as all acquisitions which are made by her, or in her name, during the marriage, are considered not to inure to her benefit, but are held to belong to the community ; so all obligations which are entered into by her, are held to be not her own personal obligations, but the obligations of the community.

In order to hold her separate estate liable, the creditor must prove, affirmatively, that the consideration of the obligation inured to her separate advantage. The presumption on the face of the obligation itself is, that it did not ; for the presumption is, that what was acquired as the consideration of the obligation belongs not to her, but to the community.

This principle has been recognized by repeated decisions, and is now too firmly fixed in the jurisprudence of the State to be shaken. See the following cases : *Pascal* v. *Sauvinet*, 1st Ann. 48. *Erwin* v. *McCalop*, 5th Ann. 173. *Exchange Company* v. *Bein*, 12 R. R. 579.

The endeavor is made to draw a distinction between the present case and those cited in this ; that in those cases, it is affirmed there was a special denial on the part of the married woman of her indebtedness, and that here, there is no such special denial.

To this we answer, that those cases do not go upon the fact, that there was a special defence. If an attempt were to be made to confirm a judgment by default against a married woman, simply upon the proof of her signature to an obligation, we hold the law to be, that such proof would be insufficient, as clearly as if the attempt were made to hold an endorser, without proof of demand, or notice of non-payment. It is a constituent part of the plaintiff's demand, without which his proof is incomplete, to show that the consideration inured to the separate advantage of the wife. When he has proved her signature, all he has proved is a debt of the community. He must go further in order to fix her liability.

But a little attention to the form in which the present controversy arises, will show that the objection, even if well founded, does not apply to the present case. Here the executor has filed his account. A person claiming to be a creditor opposes it. Now the settled rule of practice is, that the executor is considered as the plaintiff in the issue. He is not required, nor is it the practice for him to file an answer to the opposition : so that this case is wholly unlike that of an action instituted against a married woman, in which it might be necessary for her, in order to raise her defences, to plead regularly to the petition.

The judge of the court below decided in favor of the opponent. He held, that the representative of *Mrs. Dorsey* was precluded, by the judgment in the suit of *Florance* against her, from denying that she was personally bound upon the note, or that its consideration inured to her separate benefit.

It is submitted that this view of the effect of the *Florance* judgment in the issue between *Gaiennié* and *Mrs. Dorsey's* succession, assumes the very point in controversy ; for it must first be determined that *Gaiennié* is subrogated to *Florance* on that judgment, before it can have the effect of *res judicata*, in any issue between him and the decedent. Otherwise, a cardinal element is wanting in the case to give such an effect to the judgment, that is, an identity of the parties in the two issues. It is obvious that, as between herself and *Florance*, *Mrs. Dorsey* may have had no defence upon the note, while she might have had a perfect one as against *Gaiennié*. Suppose, in point of fact, she had made the note for *Gaiennié's* accommodation, could *Gaiennié* have maintained with any show of success, that on the payment by him to *Florance*, he had become subrogated to *Florance's* judgment against her? And yet, such seems the necessary consequence of the views expressed by the judge of the inferior court. *Mrs. Dorsey* may very well have had a defence to *Florance's* action,

which, as against him, he may not have thought it proper to raise. He was an SUCCESSION OF innocent third party, a *bonâ fide* holder for a valuable consideration; but the DORSEY. effect of a failure to set up a defence to *Florance* could not go beyond that suit or conclude her, except as to the plaintiff in it. As to all other parties, and in all other issues, the question would always be an open one ; one which it would be perfectly competent for her to raise, notwithstanding the judgment; as between herself and *Gaiennié*, the latter, before he can claim the right of subrogation, must first establish that he paid the debt for her. This is matter *en pais*, to be made out by the production of the proper proof. The judgment against *Mrs. Dorsey* is not the proper evidence of it. That judgment, in so far as this controversy is concerned, is *res inter alios acta*. Besides, that judgment decides nothing, as between *Gaiennié* and *Mrs. Dorsey ;* it leaves their rights and relations to be settled in a future controversy.

The true position in which we conceive *Gaiennié* to stand in this matter, is this: If this be, as he alleges, a case in which the decedent was bound to reimburse him on his payment of the note, he became entitled, by such payment, to an action upon the note. In this view, we insist his action is barred by the prescription of five years.

We have conceded thus far, that if the opponent were actually entitled to be subrogated in law to *Florance's* rights, he would thereby have become subrogated to the judgment; but there is very strong reason to suppose that such is not the necessary result of the legal subrogation. Mr. Burge puts a case identical with the present, in which such a pretension was raised without success. See Burge on Suretyship, 353 ; and to the same effect is the decision of this court, in the case of *M'Kee* v. *Amonett*, 6th Ann, 209.

The judgment of the court (*Slidell*, J., absent,) was pronounced by

EUSTIS, C. J. For the reasons assigned by the district judge, judgment affirmed, with costs.